# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Farida B. Rahman,              :
             Appellant      :
                               :
         v.                 :    No. 1574 C.D. 2017
                               :    Submitted: May 11, 2018
White Haven Ambulance     :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: August 29, 2018**

Farida B. Rahman (Appellant), proceeding pro se, appeals from the September 27, 2017 Order of the Court of Common Pleas of Luzerne County (common pleas), which granted the four preliminary objections (POs) in the nature of a demurrer filed by White Haven Ambulance (Appellee), struck Appellant's civil complaint (Complaint), and dismissed the case. On appeal, Appellant asserts common pleas' decision should be reversed and the matter remanded because: common pleas should have given her the opportunity to amend the Complaint; Appellee is not entitled to immunity; and she stated claims for invasion of privacy and fraud. Upon review, common pleas did not err or abuse its discretion in sustaining Appellee's POs and dismissing the Complaint, and, therefore, we affirm.

On or about April 6, 2017, Appellant filed the Complaint against Appellee, an ambulance company, based on allegations related to the parties' interactions on

February 21, 2016, when, pursuant to an approved Section 302 Petition,[1] Appellee removed Appellant from her property, placed her into an ambulance, and transported her to a local medical facility without Appellant's consent. The Complaint contains two counts: Count One is labeled "Willful Misconduct" and Count Two is labeled "Fraud Allegations." (Reproduced Record (R.R.) at 100a-01a.) Although Appellant includes in her filings with common pleas and her brief to this Court numerous factual allegations about what occurred during and after the events of February 21, 2016, which she believes should be considered, this matter was disposed of on POs. Thus, the only facts that can be considered are those averred in the Complaint "and no testimony or other evidence outside of the Complaint may be considered to dispose of the legal issues presented by [a] demurrer." *Drack v. Tanner*, 172 A.3d 114, 120 (Pa. Cmwlth. 2017). Applying this well-settled principle, we set forth the facts averred in Appellant's Complaint.[2]

### Count I
### Willful Misconduct

4. On or about February 21, 2016, [Appellant] refused service from [Appellee], but [Appellee] refused to leave her property; she did not call . . . 911.

5. [Appellee] filed a petition for Act 302, under the Mental Health Procedures Act [(MHPA)] . . ., and forced [Appellant] inside the ambulance with the help of Police Officers.

6. As a direct result of the action by [Appellee], [Appellant] suffered injury, mental pain and suffering, invasion of privacy, [and] intrusion

---

[1] Section 302 of the Mental Health Procedures Act (MHPA), Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7302.

[2] We are cognizant of Appellant's concerns regarding her privacy. Therefore, we have included only the factual averments set forth in her Complaint, as they are relevant to our determination, and limited our discussion to that which is necessary to the disposition of her appeal.

2

upon seclusion. The interference with [Appellant's] seclusion is a substantial and highly offensive [act] of a kind [sic] that would be offensive to the ordinary reasonable (person) as a result of conduct to which the reasonable (person) would strongly object, which cause[d] mental suffering, shame, humiliations to [Appellant] resulting from [Appellee's] actions, [and] causing mental suffering to [Appellant] is an injury to the person, *see Bernstein v. National Broadcasting Company*, . . . 129 F. Supp. 817[,] 825[, 830 (D.D.C. 1955), *aff'd*, 232 F.2d 369 (D.C. Cir. 1956)]. As a direct result of the action by [Appellee] [Appellant] received a bill for $599.90 from the Rehab Center.

7. On or about February 01, 2017, [Appellant] filed a cross-complaint[,] which cost her $42.44, to answer the complaint[,] which was filed by [Appellee] on or about January 19, 2017.

8. At the hearing, on February 16, 2017, the Honorable Judge asked [for] a copy of the Act 302 [Petition], but [Appellee] never provided a copy . . . to the court and/or to [Appellant].

9. [Appellant] called the [Appellee] several times, and asked for a copy of the Act 302 [Petition], but [Appellee] never provided [Appellant] with a copy of the Act 302 [Petition].

10. [Appellant] filed an appeal on March 16, 2017, in this case, which cost her $159.50. Proof of service of Notice of Appeal, Notary, cost her $12.68.

Count II
Fraud Allegations

11. The allegations contained in paragraph[s] 1 through 10 abo[ve] are incorporated herein as if fully set forth hereinafter.

12. On or about February 21, 2016, [Appellee] forced [Appellant] into the ambulance with the help of Police Officers after [it] received the Act 302 [Petition] on hand.

13. [Appellant] refused service at all time[s] from [Appellee], but [Appellee] lied on the petition to receive[] the Act 302, which is a violation.

3

14. Any person who provides false information purpose[ly] when he completes the petition form for Act 302 may be subject to criminal prosecution and may face criminal penalties including conviction of a misdemeanor.[3]

15. As a direct result of [Appellee's] fraudulent, malice, scandalous petition for the Act 302, [Appellant] is suffering injury, [and] causing mental suffering to [Appellant] is an injury to the person, *see Bernstein*[.]

16. This matter is subject to compulsory arbitration.

WHEREFORE, [Appellant] respectfully requests this Honorable Court enter judgment in her favor and against [Appellee] in the amount of $814.52 dollars, plus additional sums for her pain and suffering, interest, penalties, and other relief that this Court may deem proper.

(Complaint (Compl.) ¶¶ 4-16, Wherefore Clause, R.R. at 100a-02a.)

Appellee filed POs to the Complaint, asserting four reasons why Appellant had failed to state a claim upon which relief can be granted. Appellee's first PO asserted it was immune from suit for the "Willful Misconduct" claims, which generally alleged common law tort claims of invasion of privacy and intrusion upon seclusion, pursuant to Section 8151(7) of the Emergency Medical Services System Act (EMS Act), 35 Pa. C.S. § 8151(7) (related to immunity to EMS providers for actions based on failure to obtain consent for the treatment rendered where the person was unable to give consent).[4] Appellee asserted that Appellant was being

---

[3] It appears that Appellant may be referring to Section 110(a) of the MHPA, which requires that "[a]ll written statements pursuant to section 302(a)(2), and all applications, petitions, and certifications required under the provisions of this act shall be made subject to the penalties provided under 18 Pa.[]C.S. § 4904 (relating to unsworn falsification to authorities) and shall contain a notice to that effect." 50 P.S. § 7110(a).

[4] Section 8151(7) states:

No EMS provider or EMS agency may be subject to civil liability based solely on failure to obtain consent in rendering EMS to any person, regardless of age, where

4

transported and treated pursuant to Section 302 of the MHPA, which, by its nature, does not contemplate an individual giving consent to the treatment, 50 P.S. § 7302. Under these circumstances, Appellant's lack of consent was immaterial as "the consent authority of the government" was invoked pursuant to the granted Section 302 Petition. (POs ¶ 12.) Therefore, Appellee asserted it was entitled to immunity, and Appellant had not stated a claim upon which relief could be granted.

Appellee's second PO maintained that, to the extent Appellant was attempting to impose liability upon it pursuant to the MHPA,[5] the MHPA did not apply to ambulance companies. Citing Section 103 of the MHPA, 50 P.S. § 7103, which defines a "facility" under that act, Appellee pointed out that this definition does not include ambulance companies and, therefore, any claim based on the MHPA had to be dismissed. Appellee's third PO contended that Appellant's allegations of fraud were insufficient. Relying on Pennsylvania Rule of Civil Procedure 1019(b), Pa.R.C.P. No. 1019(b) ("[a]verments of fraud . . . shall be averred with particularity"), and *In re Estate of Schofield*, 477 A.2d 473, 477 (Pa. 1984) (setting forth two conditions that must be met to satisfy the requirement that fraud be pled with particularity), Appellee asserted that the mere claim that Appellee "lied on the petition" is insufficient to meet this heightened pleading requirement. (POs ¶¶ 28,

---

the person is unable to give consent for any reason, including minority, and where there is no other person reasonably available who is legally authorized to give or refuse to give consent, if the EMS provider has acted in good faith and without knowledge of facts negating consent.

35 Pa. C.S. § 8151(7). Appellee also asserted immunity under Section 8151(2) of the EMS Act, 35 Pa. C.S. § 8151(2) (related to immunity for good faith attempts to render or facilitate emergency medical care absent a showing of gross negligence or willful misconduct).

[5] The Complaint does not expressly invoke any section of the MHPA as a basis for Appellant's relief.

31.) Appellee's fourth PO maintained that Appellant did not clearly allege a claim for intrusion upon seclusion, and her claim sounding in invasion of privacy did not include any allegation that publicity was given of this matter to "the public at large," as required by Restatement (Second) of Torts § 652D (Am. Law. Inst. 1977),[6] to make a claim for invasion of privacy. (POs ¶¶ 36-37.) For any or all of these reasons, Appellee asserted the Complaint failed to state a claim upon which relief could be granted.

After Appellant filed responses in opposition to the POs, in which she asserted additional facts, common pleas heard argument on September 27, 2017. During argument, Appellee explained the bases for each of its demurrers. Appellant disagreed with those arguments on all counts, asserting facts not contained in the Complaint. She further maintained that Appellee, and its employees, should be held criminally responsible for their behavior. Common pleas explained that "any allegations of any criminal activity [were] not before [it]." (Hr'g Tr. at 8, R.R. at 84a.) Upon considering the parties' filings and argument, common pleas issued its Order sustaining all of Appellee's POs, striking the Complaint, and dismissing the case.

---

[6] Section 652D of the Restatement (Second) of Torts states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652D. Comment (a) explains that "[p]ublicity" "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. (a).

Appellant appealed, and common pleas directed her to file a Concise Statement of Errors Complained of on Appeal (Statement) in accordance with Pennsylvania Rule of Appellate Procedure 1925(b),[7] Pa.R.A.P. 1925(b). Appellant timely filed her Statement, in which she asserted she "intend[ed] to challenge all four of the [POs that] were granted by" common pleas. (R.R. at 73a.) Specifically, she argued the following. Common pleas should have given her the opportunity to amend the Complaint to exclude any reference to criminal activity, which she believed was the basis for the dismissal of the Complaint. Appellee was not entitled to immunity because its employees acted with actual malice or willful misconduct and it was vicariously liable for the negligent acts of those employees, who caused her injury while acting in the course of their employment. *Valles v. Albert Einstein Med. Ctr.*, 758 A.2d 1238, 1244 (Pa. Super. 2000), *aff'd*, 805 A.2d 1232 (Pa. 2002). Appellee prepared the Section 302 Petition and, therefore, can be held liable under the MHPA. In addition, Appellant attached a letter, dated before the Complaint, but not referenced in or attached to the Complaint, which she contended established her invasion of privacy/intrusion on seclusion claims.

In its responsive opinion (1925(a) Opinion), common pleas summarized Appellant's issues as: "[t]he Court abused its discretion in dismissing the case without granting [Appellant] an opportunity to amend the Complaint"; and "[t]he Court erred in dismissing the case when [Appellee] was vicariously liable and is not

---

[7] Rule 1925(b) provides, in pertinent part:

If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa.R.A.P. 1925(b).

7

immune." (1925(a) Opinion (Op.) at 3.) Addressing Appellant's amendment argument, common pleas observed Appellant never requested leave to amend the Complaint. It further stated the manner in which she would have amended the Complaint, to remove the criminal allegations set forth therein, would not have changed the result because that was not the basis upon which common pleas dismissed the matter. Common pleas interpreted Appellant's argument that Appellee was not immune, because its employees committed willful misconduct and acted with actual malice, as being based upon Section 8550 of the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. § 8550.[8] This reflects, common pleas concluded, Appellant's incorrect belief that vicarious liability is dispositive of her case. Common pleas held Appellant had not, in her pleadings, "establish[ed] a vicarious association through [Appellee] as an employee of a government unit." (1925(a) Op. at 5.) Here, common pleas explained, Appellee's immunity was founded on Section 8151(7) of the EMS Act because Appellant was asserting a civil claim against Appellee due to the actions it took on February 21, 2016, without her consent.

Although no specific challenge to its decision granting the other three POs was directly asserted in the Statement, common pleas explained its rationale in

---

[8] Section 8550 of the Tort Claims Act states:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. C.S. § 8550.

8

granting those POs. First, it granted the second PO because although the MHPA grants rights to covered persons against, among others, "facilities," the definition of "facilities" does not include ambulance services. (1925(a) Op. at 6 (quoting Section 103 of the MHPA, 50 P.S. § 7103).) Thus, common pleas held, "[i]n so far as [Appellant's] claim appears to stem from a lack of consent to actions taken under the [MHPA] that resulted in alleged injuries, [she] cannot make a claim against [Appellee]." (*Id.*) Next, common pleas granted the third PO because Appellant did not allege fraud with the necessary particularity, which requires the claim to be adequately explained so as to permit the opposing party to prepare a defense and "to convince the court that the averments are not merely subterfuge." (*Id.* (quoting *Schofield*, 477 A.2d at 477).) Appellant's allegation that Appellee lied to obtain approval of the Section 302 Petition was insufficient because there was no evidence in the pleading to support that claim. Last, common pleas indicated it granted the fourth PO because the nature of the Section 302 process invariably results in an intrusion upon a person's seclusion because it "compels an unwilling party to be subject to" treatment. (*Id.*) With regard to the letter Appellant attached to her Statement, which she asserted established the requisite publicity for an intrusion of privacy claim, common pleas noted this was not a fact pled in the Complaint.[9] (*Id.* at 6-7.) This appeal is now ready for this Court's consideration.[10]

---

[9] In addition, common pleas observed, to the extent the letter was premised on information obtained from court records, this one letter was not indicative of the widespread publicity required to support a cause of action for invasion of privacy. (1925(a) Op. at 7 (citing Restatement (Second) of Torts § 652D).) Common pleas further stated that a ruling that court documents could be the publicity required to satisfy this element "would condemn virtually all court filings as subject to inducing a violation of privacy and seclusion through publicity." (*Id.*)

[10] This Court's "review of a decision by [common pleas] sustaining preliminary objections is limited to a determination of whether the . . . court abused its discretion or committed an error of law, or whether constitutional rights were violated." *Drack*, 172 A.3d at 118 n.6. In an appellate

9

As a threshold matter, Appellee asserts[11] that, while appellate jurisdiction exists, it is not vested in this Court because Appellant's appeal does not fall within the scope of Section 762 of the Judicial Code, 42 Pa. C.S. § 762 (setting forth the types of appeals from courts of common pleas that fall within this Court's appellate jurisdiction). Because this Court lacks jurisdiction, Appellee asserts, we should dismiss this appeal.

---

challenge to a decision sustaining POs in the nature of a demurrer, we must determine "whether on the facts averred, the law states with certainty that no recovery is possible." *Hawks by Hawks v. Livermore*, 629 A.2d 270, 271 n.3 (Pa. Cmwlth. 1993). The test for sustaining POs is whether, based on the pleadings, it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish a right to relief. *Bower v. Bower*, 611 A.2d 181, 182 (Pa. 1992). The court need not accept argumentative allegations or expressions of opinion as true. *See Firing v. Kephart*, 353 A.2d 833, 834 (Pa. 1976).

[11] In her reply brief, Appellant requests that this Court dismiss Appellee's brief on the basis that it was untimely filed and grant her appeal. Appellant's brief includes an affidavit of service indicating she mailed Appellee, via United Parcel Service, her brief and reproduced record on March 23, 2018, making Appellee's brief due on Thursday, April 26, 2018. *See* Pennsylvania Rule of Appellate Procedure 121(e), Pa.R.A.P. 121(e) (providing that when a party is required to "act within a prescribed period of time after service of a paper upon that party . . . and the paper is served . . . by commercial carrier, three days shall be added to the prescribed period" of time). Appellee's brief was not filed until Monday, April 30, 2018. However, the Pennsylvania Rules of Appellate Procedure are to be liberally construed, and this Court has discretion to extend the time periods set forth therein so long as the time period being extended is not jurisdictional, *e.g.*, the time for filing an appeal. Pennsylvania Rule of Appellate Procedure 105, Pa.R.A.P. 105. Here, we discern no prejudice to Appellant in Appellee filing its brief two days late, particularly where Appellant received an extension to file her brief, resulting in her having more than three months to prepare and file her brief. *See Rahman v. White Haven Ambulance* (Pa. Cmwlth., No. 1574 C.D. 2017, filed Jan. 16, 2018) (granting Appellant's application for extension of time to file her brief but noting that because she "will have had more than 3 months within which to prepare a brief . . . no further extensions [would] be granted"). Accordingly, we will not dismiss Appellee's brief. We note, however, that even if we did so, this does not lessen Appellant's burden of establishing that common pleas erred or abused its discretion in sustaining the POs and dismissing the Complaint.

10

However, where appellate jurisdiction exists, an objection to a particular appellate court's jurisdiction must be made by a specific time during the appellate proceeding. Pennsylvania Rule of Appellate Procedure 741(a) provides that

> The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall,[12] unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court.

Pa.R.A.P. 741(a). Appellee's objection to this Court's jurisdiction was raised in its appellate brief, which was filed long after the last day for filing the record with this Court, and, therefore, this objection is waived. *Bolus v. Murphy*, 823 A.2d 1075, 1077 n.1 (Pa. Cmwlth. 2003), *disapproved of on other grounds*, *Reed v. Harrisburg City Council*, 995 A.2d 1137 (Pa. 2010). Regardless of whether this Court would otherwise have been the proper forum for exercising appellate jurisdiction, our jurisdiction has been perfected by the lack of timely objection.

We now turn to Appellant's arguments.[13] Appellant first asserts she should have been granted leave to amend the Complaint before her action was dismissed

---

[12] Pennsylvania Rule of Appellate Procedure 1931(a) generally requires that "the record on appeal . . . shall be transmitted to the appellate court within 60 days after the filing of the notice of appeal." Pa.R.A.P. 1931(a). The appellate court's prothonotary, upon receipt of the record, "shall file the record in the appellate court." Pennsylvania Rule of Appellate Procedure 1934, Pa.R.A.P. 1934.

[13] Appellee asserts Appellant has failed to develop or provide legal support within her brief on the issues set forth in her "Issues Presented" and, therefore, those issues are waived for appellate review. Because we can discern from her arguments in her brief issues that were both raised before common pleas and this Court, we will not find waiver.

We have read Appellant's brief, which contains an exhaustive list of perceived injuries she alleges she has endured because of the February 21, 2016 incident and the events that followed. While we understand her frustration, we are constrained, under the law, by the facts alleged and claims asserted within the Complaint itself.

11

based on the POs. She indicates that, in a different case before common pleas, she was given an opportunity to amend her Complaint despite not requesting to do so. Appellant argues she should have been given the same opportunity here.

Pennsylvania Rule of Civil Procedure 1033 allows a party to amend his or her pleadings "either by filed consent of the adverse party or by leave of court." Pa.R.C.P. No. 1033. "The decision about whether to allow an amendment is within the discretion of the trial court, but such discretion is not unfettered." *Burger v. Borough of Ingram*, 697 A.2d 1037, 1041 (Pa. Cmwlth. 1997). Amendments to a pleading "are to be liberally permitted except where surprise or prejudice to the other party will result, or where the amendment is against a positive rule of law." *Id.*

Here, Appellant neither sought the consent of Appellee to amend her Complaint, nor did she request leave of the court to amend. Although Appellee indicates she was given leave to amend a complaint in another case, she cites no authority, and we can find none, **requiring** a court to *sua sponte* order a party to amend her pleading. *See Werner v. Zazyczny*, 681 A.2d 1331, 1338 (Pa. 1996) (stating that "Appellant fails to cite to any case law, and we can find none, requiring a court to *sua sponte* order or require a party to amend his pleading"). Moreover, as common pleas explained in its 1925(a) Opinion, the removal of the criminal allegations from the Complaint would not have made a difference because its decision sustaining the POs was not based on the inclusion of that material in the Complaint. (1925(a) Op. at 4.) Therefore, we discern no abuse of discretion in common pleas not *sua sponte* allowing Appellant to amend her Complaint.

Next, Appellant asserts that she stated claims for invasion of privacy and intrusion upon seclusion. Appellant's brief asserts numerous reasons for claiming an invasion of her privacy. However, Appellant does not address common pleas'

12

conclusions that the Section 302 process necessarily intrudes on one's seclusion and that the Complaint did not plead the required level of publicity to state a claim for invasion of privacy. Appellee reiterates its arguments that Appellant did not really assert an intrusion on seclusion claim and did not aver the level of publicity required to state a claim for invasion of privacy.

Invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing the person in a false light. *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 n.9 (Pa. 1974). Invasion of privacy based on publicity given to private life occurs when "[o]ne . . . gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man." *Id.* (quoting Restatement (Second) of Torts § 652D Tent. Draft No. 13, 1967[14]). "The crux of [this] tort . . . is publicity[; w]ithout it there is no actionable wrong." *Id.* at 136. In *Vogel*, our Supreme Court held that disclosure of such matters to four people was insufficient to establish the required level of publicity to state a claim. *Id.* at 137.

Reviewing the Complaint, it does not contain any allegations about how Appellee publicized matters concerning Appellant's private life to the public. Without publicity, "there is no actionable wrong." *Id.* at 136. Accordingly, Appellant did not state a claim under this theory, and common pleas did not err in sustaining the PO to Appellant's claim.

Intrusion upon seclusion occurs when "[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable man." *Id.* at 136 n.9 (quoting Restatement (Second) of Torts § 652B Tent. Draft No.

---

[14] The 1977 version of Section 652D similarly defines this tort. *See supra* note 6.

13, 1967[15]).  To state a claim, the "plaintiff must aver that there was an intentional intrusion on the seclusion of" his or her "private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002).  While this form of invasion of privacy does not require publicity, *Harris by Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1383 (Pa. Super. 1984), it does require disclosure, *Pro Golf Mfg.*, 809 A.2d at 247.  "[T]he theory of 'intrusion upon seclusion[]' . . . requires an intentional and unwarranted [disclosure or action] by the defendant." *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 379 (Pa. 2009).

The February 21, 2016 interaction between Appellant and Appellee was premised on Section 302 of the MHPA, the purpose of which is to compel a person, without her consent, to submit to treatment.  As common pleas aptly explained, "[f]ulfilling the [MHPA's] obligations necessarily requires an intrusion upon the subject's seclusion." (1925(a) Op. at 6.)  In such circumstances, the intrusion is not unwarranted.  Moreover, similar to the lack of averments related to publicity, the Complaint does not allege sufficient facts regarding how Appellee disclosed Appellant's private concerns or how that disclosure caused her "mental suffering, shame or humiliation." *Pro Golf Mfg.*, 809 A.2d at 247.  For these reasons, Appellant did not state a claim under this theory, and common pleas did not err in sustaining the PO to Appellant's claims in Count I.

As for Count II, which averred that Appellee committed fraud by lying on the Section 302 Petition, Appellant does not explain how common pleas erred in finding

---

[15] The 1977 version of Section 652B is practically identical to the 1967 Tentative Draft version cited by the Supreme Court in *Vogel*.

that she did not plead fraud with the particularity required by precedent or the Pennsylvania Rules of Civil Procedure. Rather, Appellant asserts what she believes is proof that Appellee lied on the Section 302 Petition, none of which was averred in the Complaint. Appellee responds, as it claimed in its demurrer, that the Complaint did not plead the facts with the particularity necessary to state a claim for fraud.

Pursuant to Pennsylvania Rule of Civil Procedure 1019(b), "[a]verments of fraud . . . shall be averred with particularity." Pa.R.C.P. No. 1019(b). Our Supreme Court has explained that "[a]verments of fraud are 'meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation or offered simply to harass the opposing party and to delay the pleader's own obligation.'" *Schofield*, 477 A.2d at 477 (quoting *Bata v. Central-Penn Nat'l Bank of Phila.*, 224 A.2d 174, 179 (Pa. 1966)). Thus, to satisfy the particularity requirement, "two conditions must always be met: the pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense[;] and they must be sufficient to convince the court that the averments are not merely subterfuge." *Id.*

In the Complaint, and particularly in Count II, Appellant averred that Appellee forced her into an ambulance, despite her "refus[ing] service," after it applied for and received the 302 Petition "on hand." (Compl. ¶¶ 4-5, 12-13, R.R. at 100a-01a.) Count II then states, simply, "[Appellee] lied on the petition to receive[] the Act 302, which is a violation," and "[a]s a direct result of [Appellee's] fraudulent, malice, scandalous petition for the Act 302 [Appellant] is suffering injury." (*Id.* ¶¶ 13, 15, R.R. at 102a.) These are the only allegations made in support of the fraud claim and are, essentially, "bald accusation[s] of fraud[,] which [are] insufficient to satisfy

15

Pa.R.C.P. [No.] 1019(b)." *Schofield*, 477 A.2d at 477. The allegations are defective in that they do not advise Appellee of the nature of the claim being raised, thereby preventing it from preparing a defense. Further, the lack of particularity "make[s] it impossible for a court to determine whether the allegations have merit or are mere subterfuge." *Id.* at 477-78. Therefore, common pleas did not err in sustaining Appellee's PO to Count II based on the Complaint not having stated a claim for fraud because it did not aver that allegation with the particularity required by the rules and precedent.[16]

Accordingly, we affirm.

_____

**RENÉE COHN JUBELIRER,** Judge

---

[16] Because common pleas properly sustained these POs, which support the dismissal of the Complaint in its entirety, we need not address the remaining POs (immunity under the EMS Act and applicability of the MHPA to ambulance companies) ruled upon by common pleas.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Farida B. Rahman,                                 :
                 Appellant        :
                               :
           v.                          :        No. 1574 C.D. 2017
                               :
White Haven Ambulance                             :

# **O R D E R**

      **NOW**, August 29, 2018, the Order of the Court of Common Pleas of Luzerne County, entered in the above-captioned case, is **AFFIRMED**.


 

                          _____

                          **RENÉE COHN JUBELIRER,** Judge